FILED

2010 Jul-01  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LAKEYSHA L. WYATT,                    ]
                                      ]
        Plaintiff,                    ]
                                      ]
    vs.                               ]    2:09-CV-0301-LSC
                                      ]
MICHAEL J. ASTRUE,                    ]
Commissioner,                         ]
Social Security Administration,       ]
                                      ]
        Defendant.                    ]

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Lakeysha L. Wyatt, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").  Ms. Wyatt timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Wyatt was thirty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has completed the ninth grade via

special education EMR classes.  (Tr. at 27-28.)  Her past work experience

includes brief employment as a fast food worker and laundry worker.  *Id*.

Ms. Wyatt claims that she became disabled on August 3, 1999, due to her

being a "slower learner." *Id*. at 92.

When evaluating the disability of individuals over the age of eighteen,

the regulations prescribe a five-step sequential evaluation process.  *See* 20

C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir.

2001).  The first step requires a determination of whether the claimant is

"doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or

she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or

she is not, the Commissioner next considers the effect of all of the physical

and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These

impairments must be severe and must meet the durational requirements

before a claimant will be found to be disabled.  *Id*.  The decision depends

on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the

analysis stops.   20 C.F.R. § 416.920(a)(4)(ii).   Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's

impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §  416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ determined that Ms. Wyatt had not engaged in substantial gainful activity since the alleged

onset of her disability.  (Tr. at 14.)  According to the ALJ, Plaintiff had one severe impairment based on the requirements set forth in the regulations: mild mental retardation.  *Id*.  However, he found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments" in Appendix 1, Subpart P, Regulations No. 4.  *Id*. at 15.  The ALJ determined that Plaintiff has the residual functional capacity to

> perform a full range of work at all exertional levels with the following non-exertional limitations: She is able to perform simple, non-complex tasks; She is able to maintain attention and concentration at those tasks for an 8-hour day, provided customary breaks are given; changes to the work setting should be simple, gradual and well-explained; goals should be simple; the work must accommodate the claimant's inability to read or write above a 6th grade level.

*Id*. at 17.

According to the ALJ, Ms. Wyatt has no past relevant work; she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations.  *Id*. at 20.  The ALJ determined that Plaintiff's "transferability of job skills is not an issue in this case because the

claimant's past relevant work is unskilled." *Id*. He found that Ms. Wyatt's "ability to perform at all exertional levels has been compromised by non-exertional limitations." *Id*. However, despite these non-exertional limitations, the ALJ used Medical-Vocation Rule 204.00 and testimony from the vocational expert as guidelines for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as laundry presser, sewing machine operator, cleaner and packer. The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 30, 2005, the date the application was filed." *Id*. at 21.

II.    Standard of Review.

        The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied.   Accordingly, Plaintiff asserts that the ALJ's finding that she did not meet Listing 12.05C constitutes reversible error. (Doc. 8. at 4.)

Plaintiff contends that the ALJ erroneously concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals" Listing 12.05C. (Tr. at 15.)   A plaintiff is disabled if her impairments meet or equal an impairment in the Listings of Impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).   The plaintiff has the burden of proving that an impairment meets a listed impairment.   *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d  660, 662 (11th Cir. 1987).   To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement."   *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "To equal a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"   *Wilson*, 284 F.3d at 1224 (quoting 20

C.F.R. § 404.1526(a)).   Furthermore, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria . . . [because] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987) (claimant must "present specific medical findings that meet various tests" to meet a Listing).

Listing 12.05C provides in relevant part:

> 12.05 Mental Retardation: Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.05C.  If the plaintiff presents an impairment which satisfies the diagnostic description in the introductory

paragraph and the set of criteria described in Paragraph C of the Listing, the impairment meets the listing.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

The ALJ affirmed the medical record that Plaintiff has been diagnosed with mild mental retardation.[1]  (Tr. at 14.)  Further, the Commissioner concedes that Plaintiff has met the first prong of section 12.05C, based on her valid IQ scores.  (Doc. 9. at 5.)   Indeed, on the WAIS-III, administered on April 1, 2006, Ms. Wyatt scored a verbal IQ of 66; a performance IQ of 69; and a full-scale IQ of 64.  (Tr. at 15.)  That all IQ scores are valid and fall within the proper range of scores prescribed in the first prong of Listing 12.05C is therefore undisputed.

The sole issue, then, is whether the ALJ erred in his finding that Plaintiff did not meet the second requirement of Listing 12.05C.  Plaintiff alleges the ALJ should have considered the combined effects of all her impairments under the second prong of Listing 12.05C. (Doc. 8. at 4-5.)  To satisfy the second prong of Listing 12.05C, Plaintiff must present evidence

---

[1] The ALJ does not explicitly address whether Plaintiff met the diagnostic criteria of the introductory paragraph in Listing 12.05. However, because Plaintiff failed to meet the second prong of Listing 12.05C, the court need not address this issue.

of "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   The Eleventh Circuit has interpreted earlier versions of the quoted regulatory language, *supra*, to refer to an additional impairment as something less than "severe," as defined in Step 2 of the sequential evaluation process. *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). "However, the Commissioner has modified introductory paragraph 12.00A and Listing 12.05C to clarify that the additional physical and mental impairment must be 'severe.'" *Carroll v. Astrue*, 2009 WL 1708073, *1 (M.D. Ala. Jun. 17, 2009) ("We have always intended the phrase [significant work related limitation of function] to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c). . .  Therefore, . . . we revised the fourth paragraph of final 12.00A, which explains how we assess the functional limitations of an additional impairment under listing 12.05C." (quoting 65 Fed.Reg. 50,746 at 50,772)).

At step 2, the ALJ determined that Plaintiff has no severe impairments in addition to her mild mental retardation.   (Tr. at 14.)   Ms. Wyatt's adjustment disorder and depression are non-severe impairments. *Id*.   A

"severe" impairment "significantly limits [a claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 416.920(c). Basic work activities are the "abilities and aptitudes necessary to do most jobs, including: walking, standing, sitting, lifting, pushing, pulling, carrying or handling, etc." *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985); *See also* C.F.R. § 416.921(b). "The 'work-related limitation of function' intended by Listing 12.05C is the same form of impairment." *Black v. Astrue*, 678 F. Supp. 2d 1250, 1262 (N.D. Fla. 2010). Accordingly, Plaintiff's argument that the ALJ should consider all her impairments in combination is without merit. If the severity analyses at step 2 and the second prong of Listing 12.05C are the same, as the regulations suggest, the ALJ should not reconsider the combined effects of all Plaintiff's alleged impairments under the second prong of Listing 12.05C. Indeed, if none of the variables have changed, and unless the regulations so required, it would be of little value to run the same severity test twice. Thus, the final construction of the second prong of Listing 12.05C should read:  Plaintiff must have a physical or mental impairment, other than her mental retardation, that is severe as determined in step 2. *See* 65 Fed.Reg. 50,746 at 50,772 ("We always have

intended that there be a separate physical or mental impairment apart from the claimant's mental retardation that imposes an additional and significant work-related limitation of function"). This court concludes this to be the only logical reading of the second prong in Listing 12.05C.

Consequently, the ALJ will have erred in his finding that Plaintiff failed to meet Listing 12.05C, if his determination in step 2, on the severity of Plaintiff's alleged impairments, is not supported by substantial evidence. In step 2, the ALJ weighed all medical evidence in the record and made a determination on the severity of Ms. Wyatt's depression and adjustment disorder. Notwithstanding Plaintiff's mild mental retardation, the ALJ found no other impairment in Plaintiff's medical record to be severe. The ALJ states in relevant part:

> Her adjustment disorder has largely been treated with routinely-prescribed psychotherapeutic medication such as trazodone, Ambien and Wellbutrin. These treatment records reveal GAF scores of 55 to 60. It is noted that the medical record does not indicate the claimant has longitudinal histories of adjustment disorder with depression or mental health treatment lasting a period of at least twelve consecutive months. With adherence to mental health treatment, the claimant's adjustment disorder with depression is

not expected to last at least twelve consecutive months.   This condition minimally affects the claimant's ability to work, if at all; thus, it is a non-severe impairment.[2]

(Tr. at 15, 131 and 150.)

Additionally, Dr. Rankart, an agency expert charged with examining Plaintiff's residual functional capacity, also notes that even if Plaintiff were diagnosed with mild mental retardation "with valid IQ scores in the 60's, [the] case would not be an allowance, as we have no other mental impairment posing additional and significant workplace limitations." (Tr. at 163.)

This court finds the ALJ did not err in finding Plaintiff failed to meet Listing 12.05C as the medical record does not indicate any other source than Plaintiff's mild mental retardation which could be considered severe.

─────────────

[2]As expected, the ALJ's determination as to whether Plaintiff met Listing 12.05C with regard to an additional "severe" impairment was merely a reiteration of his analysis in step 2, which reads: "As mentioned previously, the claimant's adjustment disorder with depression is a non-severe impairment that minimally affects her ability to work, if at all. In light of GAF scores (ranging from 55 to 60) contained in Exhibits 3f, 7f, and 8f and the claimant's intact abilities to take care of her six children primarily by herself, the adjustment disorder does not pose a significant work-related limitation of function. School records contained in Exhibit 6f indicate that the claimant's adaptive functioning was adequate even though her intelligence test scores were consistent with mental retardation. (Tr. at 17.)

IV.     Conclusion.

Upon review of the administrative record, and considering all of Ms. Wyatt's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>1st</u> day of <u>July 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671